Heidi Kukis Hoffman, Trial Attorney
   For Plaintiff United States of America
U.S. Department of Justice
Environmental Enforcement Section
1961 Stout Street, 8th Floor
Denver, CO   80202
Telephone (303) 844-1392

Dennis C. Farley
   For Defendant Union Pacific Railroad Company
Lear & Lear LLP
299 South Main, Suite 2200
Wells Fargo Center
Salt Lake City, Utah 84111
Telephone (801) 538-5010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>   v.<br><br>UNION PACIFIC RAILROAD<br>COMPANY,<br><br>        Defendant. | CIVIL ACTION NO. _____ |

**CONSENT DECREE FOR REMEDIAL DESIGN/REMEDIAL ACTION**
**OGDEN RAIL YARD SITE**
**OGDEN, UTAH**

Exhibit A

## TABLE OF CONTENTS

I. Background ........................................................................................................1
II. Jurisdiction ......................................................................................................4
III. Parties Bound .................................................................................................4
IV. Definitions .......................................................................................................5
V. General Provisions ..........................................................................................10
VI. Performance of the Work By Settling Defendants...................................13
VII. Remedy Review ............................................................................................17
VIII. Quality Assurance, Sampling, and Data Analysis ...............................19
IX. Access and Institutional Controls .............................................................21
X. Reporting Requirements ................................................................................25
XI. EPA Approval of Plans and Other Submissions ......................................28
XII. Project Coordinators ...................................................................................30
XIII. Performance Guarantees ..........................................................................31
XIV. Certification of Completion ......................................................................37
XV. Emergency Response ....................................................................................40
XVI. Payments for Response Costs ...................................................................42
XVII. Indemnification and Insurance ..............................................................45
XVIII. Force Majeure ...........................................................................................47
XIX. Dispute Resolution .....................................................................................49
XX. Stipulated Penalties .....................................................................................53
XXI. Covenants Not to Sue by Plaintiff ...........................................................58
XXII. Covenants by Settling Defendants .........................................................64
XXIII. Effect of Settlement; Contribution Protection...................................65
XXIV. Access to Information ...............................................................................67
XXV. Retention of Records .................................................................................69
XXVI. Notices and Submissions .........................................................................70
XXVII. Effective Date ...........................................................................................72
XXVIII. Retention of Jurisdiction......................................................................72
XXIX. Appendices .................................................................................................72
XXX. Community Relations .................................................................................73
XXXI. Modification ...............................................................................................73
XXXII. Lodging and Opportunity for Public Comment..................................74
XXXIII. Signatories/Service ...............................................................................74
XXXIV. Final Judgment ........................................................................................75

## I.   BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter

against Union Pacific Railroad Company ("Settling Defendant") pursuant to Sections 106 and

107 of the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, inter alia: (1) reimbursement of costs

incurred by EPA and the Department of Justice for response actions at the Ogden Rail Yard Site

in Ogden, Utah ("Site"), together with accrued interest; and (2) performance of studies and

response work by the Settling Defendant at the Site consistent with the National Contingency

Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C.

§ 9621(f)(1)(F), EPA notified the State of Utah (the "State") of negotiations with potentially

responsible parties regarding the implementation of the remedial action for the Site, and EPA has

provided the State with an opportunity to participate in such negotiations and be a party to this

Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the U.S. Department of the Interior and the Utah State Department of Health of

negotiations with potentially responsible parties regarding the release of hazardous substances

that may have resulted in injury to the natural resources under Federal trusteeship and

encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The Settling Defendant does not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. Settling Defendant does not admit and retains the right to controvert any of the factual or legal statements or determinations made herein in any judicial or administrative proceeding except in an action to enforce this Consent Decree, or as provided in Paragraph 88 (United States' General Reservations), or in a dispute resolution proceeding under Section XIX of this Consent Decree. Specifically, this Consent Decree shall not be admissible in any judicial or administrative proceeding against the Settling Defendant over its objection as proof of liability or as an admission of any fact asserted herein. Settling Defendant does agree, however, to the Court's jurisdiction to enter and enforce this Consent Decree. In any such proceeding to enter or enforce this Consent Decree, the Settling Defendant shall not challenge the terms of this Consent Decree. This Consent Decree shall not be admissible for any purpose, for or against either Party, in any judicial or administrative proceeding concerning natural resource damages.

F.      The Site has been treated as a Superfund Alternative Site.

G.      In 2000, in response to a release or a substantial threat of a release of hazardous substances at or from the Site, Settling Defendant commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site in accordance with 40 C.F.R. § 300.430 and pursuant to an Administrative Order on Consent, U.S. EPA Docket No. CERCLA-8-99-12.

H.      Settling Defendant completed a Remedial Investigation ("RI") Report in September, 2003, and a Feasibility Study ("FS") Report in September, 2004.

2

I.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on May 23, 2004, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A public meeting was held on May 26, 2004. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

J.     The decisions by EPA on the remedial actions to be implemented at the Site are embodied in two final Records of Decision ("RODs"), both of which were executed on September 30, 2004, and concurred upon by the State. The RODs include responsiveness summaries to the public comments. Notice of the final plans was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617.

K.     Based on the information presently available to EPA, EPA believes that the work will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.     Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. §9613(j), the Remedial Action selected by the RODs and the work to be performed by the Settling Defendant shall constitute response actions taken or ordered by the President.

M.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated

litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns.  Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this

4

Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

IV.   DEFINITIONS

4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or State or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 106.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs on or after October 1, 2005, in negotiating this Consent Decree, reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 89 of Section XXI.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Work Plans.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 30, 2005, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the RODs.

"Plaintiff" shall mean the United States of America.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"ROD for OU 1" shall mean the EPA Record of Decision relating to Operable Unit 1 of the Site, signed on September 30, 2004, by the Regional Administrator, EPA Region 8 or his delegate, and all attachments thereto. The ROD for OU 1 is attached hereto as Appendix A.

"ROD for OU 4" shall mean the EPA Record of Decision relating to Operable Unit 4 of the Site, signed on September 30, 2004, by the Regional Administrator, EPA Region 8 or his delegate, and all attachments thereto. The ROD for OU 4 is attached hereto as Appendix B.

"Recorded Notice" shall mean the notice set forth in the Notice to Successors in Interest, Notice of Environmental Institutional Controls and Easement attached hereto as Appendix C.

"Records of Decision" or "RODs" shall mean the ROD for OU 1 and the ROD for OU 4 collectively.

"Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by the Settling Defendant to implement the RODs, in accordance with the Work Plans and other plans approved by EPA.

"Remedial Action Area" shall mean that portion of the Site generally described as the area north of the 31st Street overpass that is underlain by the contamination plumes at which the Work is to be implemented and depicted on the map attached hereto as Appendix D. That portion of the Remedial Action Area owned by Settling Defendant is more specifically described in the Recorded Notice.

"Remedial Action Work Plan for OU 1" shall mean the work plan for the performance of the Remedial Action in accordance with the ROD for OU 1 entitled "Ogden Rail Yard Remedial Action Work Plan Operable Unit 1" dated March 22, 2006 and entered into EPA's Superfund Document Management System under document number 2044578, which work plan has been prepared by Settling Defendant, approved by EPA, and is incorporated into this Consent Decree by this reference, and any modifications made in accordance with this Consent Decree.

"Remedial Design Work Plan for OU 1" shall mean the work plan for the design of the Remedial Action in accordance with the ROD for OU 1 entitled "Ogden Rail Yard Remedial Design Work Plan Operable Unit 1" dated  March 24, 2006, and entered into EPA's Superfund Document Management System under document number 2044577, which work plan has been

prepared by Settling Defendant, approved by EPA, and is incorporated into this Consent Decree by this reference, and any modifications made in accordance with this Consent Decree.

"Remedial Design/Remedial Action Work Plan for OU 4" shall mean the work plan for the design and performance of the Remedial Action in accordance with the ROD for OU 4 entitled "Ogden Rail Yard Remedial Design/Remedial Action Work – Operable Unit 4" dated December 30, 2005, and entered into EPA's Superfund Document Management System under document number 2044579,which work plan has been prepared by Settling Defendant, approved by EPA and is incorporated into this Consent Decree by this reference, and any modifications made in accordance with this Consent Decree.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Union Pacific Railroad Company.

"Site" shall mean the Ogden Rail Yard Site, encompassing approximately 1,120 acres of land owned by Settling Defendant, located west of the City of Ogden in Weber County, Utah, and depicted generally on the map attached hereto as Appendix E.

"State" shall mean the State of Utah, including all of its departments, agencies, and instrumentalities.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"UDEQ" shall mean the Utah Department of Environmental Quality and any successor departments or agencies of the State.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); and (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33).

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

"Work Plans" shall mean the Remedial Design Work Plan for OU 1, the Remedial Action Work Plan for OU 1, and the Remedial Design/Remedial Action Work Plan for OU 4 collectively.

### V.   GENERAL PROVISIONS

5.   Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendant, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant as provided in this Consent Decree.

6.   Commitments by Settling Defendant.  Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the RODs, the Work Plans and all other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree.  Settling Defendant shall also reimburse the United States for Future Response Costs as provided in this Consent Decree.

7.   Compliance With Applicable Law.  All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendant must

10

also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the RODs and the Work Plans.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

       8.     <u>Permits</u>.

       a.     As provided in Section 121(e) of CERCLA, 42 U.S.C. §9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

       b.     Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

       c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

       9.     <u>Notice to Successors-in-Title</u>.

       a.     Within thirty (30) days after entry of this Consent Decree, Settling Defendant shall record a Recorded Notice in substantially the same form as the notice attached hereto as Appendix C in the Recorder's Office, Weber County, Utah, providing notice to all successors-in-title that the property owned by Settling Defendant is part of the Site, that EPA selected a remedy

for the Site on September 30, 2004, and that Settling Defendant has entered into a Consent Decree requiring implementation of the remedy. The Recorded Notice shall identify the United States District Court in which the Consent Decree was filed and the name and civil action number of this case. The Settling Defendant shall provide EPA with a certified copy of the Recorded Notice within thirty (30) days of recording such notice.

b.    Until such time as EPA issues Certification of Completion of the Remedial Action in accordance with Paragraph 51 (b), at least thirty (30) days prior to the conveyance of any interest in property located within the Remedial Action Area and owned by the Settling Defendant including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Settling Defendant shall give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee.

c.    In the event of any such conveyance, the Settling Defendant's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section IX (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Defendant. In no event shall the conveyance release or otherwise affect the liability of the Settling Defendant to comply with all provisions of this Consent Decree, absent the prior written consent of EPA. If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

10.   Selection of Supervising Contractor.

a.   All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA.  Settling Defendant has identified Kennedy/Jenks Consultants as its Supervising Contractor to whom EPA has not objected.

b.   If at any time, Settling Defendant proposes to change its Supervising Contractor, Settling Defendant shall notify EPA at least thirty (30) days in advance of any such change and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed.

c.   If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing.  Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor that would be acceptable to them within thirty (30) days of

13

receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within twenty-one (21) days of EPA's authorization to proceed.

        c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

        11.      <u>Remedial Action</u>.

        a.      Within thirty (30) days after the Effective Date of this Consent Decree, Settling Defendant shall begin implementation of the Remedial Action Work Plan for OU 1 and the Remedial Design/Remedial Action Work Plan for OU 4. Settling Defendant shall submit to EPA and the State a Health and Safety Plan for field activities required by the Work Plans which conforms to the applicable Occupational Safety and Health Administration, EPA requirements including, but not limited to, 29 C.F.R. § 1910.120, and the Federal Railroad Administration safety requirements.

        b.      The Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Work Plans in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).

12.     The Settling Defendant shall continue to implement the Remedial Action and

O&M until the Performance Standards are achieved and for so long thereafter as is otherwise

required under this Consent Decree.

13.     <u>Modification of the Work Plans</u>.

a.     If EPA determines that modification to the Work is necessary to achieve and

maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy

set forth in the RODs, EPA may require that such modification be incorporated in the Work

Plans, provided, however, that a modification may only be required pursuant to this Paragraph to

the extent that it is consistent with the scope of the remedy selected in the RODs.

b.     For the purposes of this Paragraph 13 and Paragraph 51 only, the "scope of the

remedy selected in the RODs" is as follows:

(i)  The scope of remedy selected in the ROD for OU 1 consists of the capping of

contaminated sediments in the 21st Street Pond, prevention of further movement of wastes into

the pond through the erection of a cofferdam and collection sumps, removal of mobile dense

nonaqueous phase liquids from the former Pintsch Gas Plant, monitoring of the pond, and

institutional controls to prevent use of ground water in the area and to protect the integrity of the

cap.

(ii) The scope of the remedy selected in the ROD for OU 4 consists of removal of the

main trunk line of the industrial sewer system and any associated contaminated soils, flushing of

any remaining sludges from the branch lines of the industrial sewer system, monitored natural

attenuation of chlorinated solvents and degradation products, design of a contingent remedy

should the solvent plume move toward receiving waters, and institutional controls to prevent the use of ground water until Performance Standards are achieved.

c.  If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 69 (record review).  The Work Plans shall be modified in accordance with final resolution of the dispute.

d.     Settling Defendant shall implement any work required by any modifications incorporated in the Work Plans in accordance with this Paragraph.

e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Settling Defendant acknowledges and agrees that nothing in this Consent Decree or the Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

15.     Off-Site Shipments

a.     Settling Defendant shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)     The Settling Defendant shall include in the written notification the following information, where available: (a) the name and location of the facility to which the Waste Material is to be shipped; (b) the type and quantity of the Waste Material to be shipped; (c) the expected schedule for the shipment of the Waste Material; and (d) the method of transportation. The Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendant following the award of the contract for Remedial Action construction. The Settling Defendant shall provide the information required by Paragraph 15 (a)(1) as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.      Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendant shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3), 42 U.S.C. §9621(d)(3), and 40 C.F.R. 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII.   REMEDY REVIEW

16.     Periodic Review. Settling Defendant shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action

is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. §9621(c), and any applicable regulations.

17.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

18.     Opportunity To Comment.  Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §9613(k)(2) or 42 U.S.C. §9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA, 42 U.S.C. §9612(c), and to submit written comments for the record during the comment period.

19.     Settling Defendant's Obligation To Perform Further Response Actions.  If EPA selects further response actions for the Site, the Settling Defendant shall undertake such further response actions to the extent that the reopener conditions in Paragraph 85 or Paragraph 86 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 85 or Paragraph 86 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 69 (record review).

20.   <u>Submissions of Plans</u>.  If Settling Defendant is required to perform further response actions pursuant to Paragraph 19, it shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the provisions of this Consent Decree.

VIII.   Quality Assurance, Sampling, and Data Analysis

21.   Settling Defendant shall use quality assurance, quality control, and chain of custody procedures specified in the Quality Assurance Project Plan ("QAPP").  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.  In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendant may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods.  Settling Defendant shall ensure that all

19

laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendant shall notify EPA not less than ten (10) days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendant to take split or duplicate samples of any samples it takes as part of EPA's oversight of the Settling Defendant's implementation of the Work.

23.     Settling Defendant shall submit to EPA three (3) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

24.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX     ACCESS AND INSTITUTIONAL CONTROLS

25.     If the Remedial Action Area or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by the Settling Defendant, the Settling Defendant shall:

a.     commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors,  with access at all reasonable times to the Remedial Action Area, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1) Monitoring the Work;

(2) Verifying any data or information submitted to the United States;

(3) Conducting investigations relating to contamination at or near the Remedial Action Area;

(4) Obtaining samples;

(5) Assessing the need for, planning, or implementing additional response actions at or near the Remedial Action Area;

(6) Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plan;

(7) Implementing the Work pursuant to the conditions set forth in Paragraph 89 of this Consent Decree;

(8) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIV (Access to Information);

(9) Assessing Settling Defendant's compliance with this Consent Decree; and

(10) Determining whether the Remedial Action Area or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b.      commencing on the date of lodging of this Consent Decree, refrain from using the Remedial Action Area, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.   EPA acknowledges that Settling Defendant will continue to operate the Site as an active rail yard.

c.      within thirty (30) days after the Effective Date of this Consent Decree, execute and record in the appropriate land records office of Weber County, Utah, an easement, running with the land in substantially the same form as the Recorded Notice attached hereto as Appendix C, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25 (a) of this Consent Decree, and (ii) grants the right to enforce restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Settling Defendant shall

22

grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) and/or other appropriate grantees.   Settling Defendant shall, within forty-five (45) days of entry of this Consent Decree, also submit to EPA a certified copy of the Recorded Notice showing the clerk's recording stamps.

26.     If the Remedial Action Area, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than the Settling Defendant, Settling Defendant shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25 (a) of this Consent Decree;

b.     an agreement, enforceable by the Settling Defendant and the United States, to refrain from using the Remedial Action Area, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

c.     the execution and recordation in the land records office of Weber County, State of Utah, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25 (a) of this Consent Decree, and (ii) grants the right to enforce restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent

23

Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendant and its representatives, and/or (iv) other appropriate grantees. Within forty-five (45) days of entry of this Consent Decree, Settling Defendant shall submit to EPA for review and approval with respect to such property a draft easement that is enforceable under the laws of the State of Utah. Within thirty (30) days of EPA's approval and acceptance of the easement, Settling Defendant shall record the easement with the appropriate land records office of Weber County. Within thirty (30) days of the recording of the easement, Settling Defendant shall provide EPA with a certified copy of the original recorded easement showing the clerk's recording stamps.

  27. For purposes of Paragraphs 25 and 26 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance. If (a) any access or land/water use restriction agreements required by Paragraphs 26 (a) or 26 (b) of this Consent Decree are not obtained within forty-five (45) days of the Effective Date of this Consent Decree, (b) any access easements or restrictive easements required by Paragraph 26 (c) of this Consent Decree are not submitted to EPA in draft form within forty-five (45) days of the Effective Date of this Consent Decree, or (c) Settling Defendant is unable to obtain an agreement pursuant to Paragraph 25 (c) (2) or Paragraph 26 (c) (2) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree within forty-five (45) days of the date of entry of this Consent Decree, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that

Settling Defendant has taken to attempt to comply with Paragraph 25 or 26 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the RODs, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's efforts to secure such governmental controls.

29.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X.     REPORTING REQUIREMENTS

30.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State, until such time as EPA approves the Remedial Action Construction Completion Report and monitored natural attenuation has been implemented, three (3) copies of written monthly progress reports that: (a) describe the actions which have been

taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of the Work Plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including Gantt charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the Work Plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks.  Settling Defendant shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree.  If requested by EPA, Settling Defendant shall also provide briefings for EPA to discuss the progress of the Work.

31.     The Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of Work Plans, no later than seven (7) days prior to the performance of the activity.

32.     Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. §9603 , or Section 304, of the Emergency Planning and Community Right-to-know Act (EPCRA), 42

U.S.C. § 1104, Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 8, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103, 42 U.S.C. §9603 or EPCRA Section 304, 42 U.S.C. § 1104.

33.     Within twenty (20) days of the onset of such an event, Settling Defendant shall furnish to Plaintiff a written report, signed by the Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

34.     Settling Defendant shall submit three (3) copies of all plans, reports, and data required by the Work Plans, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendant shall simultaneously submit one (1) copy of all such plans, reports and data to the State. Settling Defendant shall submit in electronic form all major reports, as designated in the Work Plans and all collected field data, including GPS information. Upon request by EPA, Settling Defendant shall submit in electronic form all portions of any other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

35.     All reports and other documents submitted by Settling Defendant to EPA (other than the monthly progress reports referred to above) which purport to document Settling

Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

## XI.    EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within thirty (30) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36 (a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36 (c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

38.    Resubmission of Plans.

a.    Upon receipt of a notice of disapproval pursuant to Paragraph 36 (d), Settling Defendant shall, within thirty (30) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 30 day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 36 and 37.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36 (d), Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

39.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item. Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

40.    If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and

29

Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

41.    All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII.    PROJECT COORDINATORS

42.    Settling Defendant has designated Gary Honeyman, Manager Environmental Site Remediation, Union Pacific Railroad Company, 221 Hodgeman, Laramie, Wyoming, 82072, as its Project Coordinator to whom EPA does not object. EPA hereby designates Erna Waterman, Remedial Project Manager, US EPA Region 8, 999-18th Street, Suite 300, Denver, Colorado, 80202, as its Project Coordinator. If the Project Coordinator is changed, the identity of the successor will be given to the other Party at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendant's Project Coordinator shall not be an attorney for the Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Remedial Action Area constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

44.     EPA's Project Coordinator and the Settling Defendant's Project Coordinator will meet, at a minimum, on a monthly basis in person or by telephone.

## XIII    PERFORMANCE GUARANTEE

45.     In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $2,500,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms:

a.      A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of

credit, (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

      c.      A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

      d.      A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

      e.      A demonstration by the Settling Defendant that it meets the financial test criteria of 40 C.F.R. Part 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. Part 264.143(f) are satisfied; or

      f.      A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of the Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. Part 264.141(h)) with the Settling Defendant; provided however that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. Part 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

      46.      Settling Defendant has selected and EPA has accepted as an initial Performance Guarantee a demonstration that Settling Defendant meets the financial test criteria pursuant to Paragraph 45(e).

47.     If at any time during the effective period of this Consent Decree, Settling

Defendant provides a Performance Guarantee for completion of the Work by means of a

demonstration or guarantee pursuant to Paragraph 45 (e) or (f) above, it shall also comply with

the other relevant requirements of 40 C.F.R. Part 264.143(f), 40 C.F.R. Part 264.151(f), and 40

C.F.R. Part 264.151(h)(1) relating to these methods unless otherwise provided in this Consent

Decree, including, but not limited to, (i) the initial submission of required reports and statements

from the guarantors' chief financial officer and independent certified public accountant; (ii) the

annual re-submission of such reports and statements within ninety (90) days after the close of

each of the guarantors' fiscal years; and (iii) the notification of EPA within ninety (90) days after

the close of any of the guarantors' fiscal years in which any such guarantor no longer satisfies

the financial test requirements set forth at 40 C.F.R. Part 264.143(f)(1).  For purposes of the

Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264

Subpart H, to "closure, "post-closure" and "plugging and abandonment" shall be deemed to refer

to the Work requirements under the Consent Decree, and the terms "current closure cost

estimate", "current post-closure cost estimate", and "current plugging and abandonment cost

estimate" shall be deemed to refer to the Estimated Cost of the Work.

48.     In the event that EPA determines at any time that a Performance Guarantee

provided by the Settling Defendant pursuant to this Section is inadequate or otherwise no longer

satisfies the requirements set forth in this Section, whether due to an increase in the estimated

cost of completing the Work or for any other reason, or in the event that Settling Defendant

becomes aware of information indicating that a Performance Guarantee provided pursuant to this

Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section,

whether due to an increase in the estimated cost of completing the Work or for any other reason,

Settling Defendant shall, within thirty (30) days of receipt of notice of EPA's determination or, as

the case may be, within thirty (30) days of becoming aware of such information, obtain and

present to EPA for approval a proposal for a revised or alternative form of Performance

Guarantee listed in Paragraph 45 of this Consent Decree that satisfies all of the requirements set

forth in this Section XIII.  In seeking approval for a revised or alternative form of Performance

Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 50(b)(ii) of this

Consent Decree.  Settling Defendant's inability to post a Performance Guarantee for completion

of the Work shall in no way excuse performance of any other requirements of this Consent

Decree, including, without limitation, Settling Defendant's obligation to complete the Work in

strict accordance with the terms hereof.

49.    The commencement of any Work Takeover pursuant to Paragraph 89 of this

Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee

provided pursuant Paragraph 45, and at such time EPA shall have immediate access to resources

guaranteed under any such Performance Guarantee, whether in cash or in kind, to continue and

complete the Work assumed by EPA under the Work Takeover, subject to Settling Defendant's

right to invoke dispute resolution in accordance with Paragraph 89 (c).  If for any reason EPA is

unable to promptly secure the resources guaranteed under any such Performance Guarantee,

whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under

the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of

satisfaction of the financial test criteria pursuant to Paragraph  45(e), Settling Defendant shall

after EPA has notified Settling Defendant that a Work Takeover is warranted in accordance with

Paragraph 89 (b), and upon written demand from EPA, deposit into an account specified by

EPA, in immediate funds and without setoff, counterclaim, or condition of any kind, a cash

34

amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date as determined by EPA.

50.     a.     <u>Reduction of Amount of Financial Assurance</u>.  If Settling Defendant believes that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 45 above after entry of this Consent Decree, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided under this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  Settling Defendant shall submit a written proposal for such reduction to EPA which shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a revised or alternative form of a Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 50(b)(ii).  EPA shall notify the Settling Defendant of its decision in writing.  It is contemplated by the Parties that the amount of the Performance Guarantee will be reduced after EPA's approval of the Remedial Action Construction Completion Report consistent with the provisions of this Paragraph.  After receiving EPA's written acceptance, Settling Defendant may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, Settling Defendant may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 48 and 50(b) of this Consent Decree.

b.      Change of Form of Performance Guarantee.

(i)      If, after entry of this Consent Decree, Settling Defendant desires to change the

form or terms of any Performance Guarantee provided pursuant to this Section XIII, Settling

Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time

agreed to by the Parties, petition EPA in writing to request a change in the form of Performance

Guarantee provided hereunder.  The submission of such proposed revised or alternative form of

Performance Guarantee shall be as provided in Paragraph 50 (b)(ii) of this Consent Decree.

(ii)  Settling Defendant shall submit a written proposal for a revised or alternative form

of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the

remaining Work to be performed, the basis upon which such cost estimate was calculated and the

proposed revised form of Performance Guarantee, including all proposed instruments or other

documents required in order to make the proposed Performance Guarantee legally binding.   The

proposed revised or alternative form of Performance Guarantee must satisfy all requirements set

forth or incorporated by reference in this Section.  Settling Defendant shall submit such proposed

revised or alternative form of Performance Guarantee to the EPA Regional Financial

Management Officer in accordance with Section XXVI (Notices and Submissions) with a copy

to Daniela Golden, US EPA Region 8, Mail Code 8ENF-RC, 999-18[th] Street, Suite 300, Denver,

Colorado 80202.  EPA shall notify the Settling Defendant in writing of its decision to accept or

reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph.

Within thirty (30) days after receiving a written decision accepting the proposed revised or

alternative Performance Guarantee, Settling Defendant shall execute and/or otherwise finalize all

instruments or other documents required in order to make the selected Performance Guarantee

legally binding in a form substantially identical to the documents submitted to EPA as part of the

proposal, and such Performance Guarantee shall thereupon be fully effective. Settling Defendant

shall submit all executed and/or otherwise finalized instruments or other documents required in

order to make the selected Performance Guarantee legally binding to the EPA Regional Financial

Management Officer within forty-five (45) days of receiving the written decisions approving the

proposed revised or alternative Performance Guarantee in accordance with Section XXVI

(Notices and Submissions) with a copy to Daniela Golden, US EPA Region 8, Mail Code 8ENF-

RC, 999-18th Street, Suite 300, Denver, Colorado 80202, and to the United States and EPA as

specified in Section XXVI.

      c.    Release of Financial Assurance. If Settling Defendant receives written notice

from EPA in accordance with Paragraph 51 hereof that the Work has been fully and finally

completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies

Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue

the Performance Guarantee provided pursuant to this Section. Settling Defendant shall not

release, cancel or discontinue any Performance Guarantee provided pursuant to this Section

except as provided in this subparagraph. In the event of a dispute, Settling Defendant may

release, cancel, or discontinue the Performance Guarantee required hereunder only in accordance

with a final administrative or judicial decision resolving such dispute.

XIV.  CERTIFICATION OF COMPLETION

      51.    Completion of the Remedial Action.

      a.    Within ninety (90) days after Settling Defendant concludes that the Remedial

Action has been fully performed and the Performance Standards have been attained, Settling

Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling

Defendant, EPA, and the State. If, after the pre-certification inspection, the Settling Defendant

still believes that the Remedial Action has been fully performed and the Performance Standards have been attained, it shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI (EPA Approval of Plans and Other Submissions) within thirty (30) days of the inspection.  In the report, a registered professional engineer and the Settling Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or the Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the RODs," as that term is defined in Paragraph 13 .  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the Work Plans or require the Settling Defendant to

submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendant's obligations under this Consent Decree.

52.      Completion of the Work.

a.      Within ninety (90) days after Settling Defendant concludes that all phases of the Work (including O & M), have been fully performed, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant and EPA. If, after the pre-certification inspection, the Settling Defendant still believes that the Work has been fully performed, Settling Defendant shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or the Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that
> the information contained in or accompanying this submission is true,

accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the Work Plans or require the Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendant and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendant in writing.

## XV.   EMERGENCY RESPONSE

53.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Remedial Action Area that

constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator.  If EPA's Project Coordinator is not available, the Settling Defendant shall notify the EPA Emergency Response Unit, Region 8.  Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the Work Plans.  In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendant shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

54.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

41

XVI   PAYMENTS FOR RESPONSE COSTS

55.   Payments for Past Response Costs.

a. Within thirty (30) days of the Effective Date of this Consent Decree, Settling Defendant shall pay to EPA twenty thousand seven hundred seventy nine dollars ($20,779) in payment of Past Response Costs.

b. Settling Defendant shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 08-7E, OU 1 and OU 4, and DOJ Case Number 90-11-2-08568.  Settling Defendant shall send the check(s) to:

> Regular mail:         Mellon Bank
>                       Attn: Superfund Accounting
>                       Lockbox 360859
>                       Pittsburgh, PA 15251-6859
>
>
> Overnight Mail:       U.S. EPA 360859
>                       Mellon Client Service Center Room 670
>                       500 Ross Street
>                       Pittsburgh, PA 15262-0001

Wire transfers should be sent directly to the Federal Reserve Bank in New York City with the following information:

> ABA=021030004
> TREAS NYC/CTR
> BNF=/AC-68011008

c.      At the time of payment, Settling Defendant shall send notice that payment has been made to the United States in accordance with Section XXVI (Notices and Submissions). and to Financial Management Officer, U.S. EPA Region 8, 999 18th Street, Suite 300, Denver, CO 80202-2466

d.      The total amount to be paid by Setting Defendant pursuant to Subparagraph (a) shall be deposited in the Ogden Rail Yard Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

56.    Payments for Future Response Costs.

a.      Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan.  On a periodic basis the United States will send Settling Defendant a bill requiring payment that includes a standard Regionally-prepared cost summary, which includes direct and indirect costs incurred by EPA and its contractors, and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors.  Settling Defendant shall make all payments within thirty (30) days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 57.  Settling Defendant shall make all payments required by this Paragraph in accordance with the provisions of Paragraph 55 (b) and (c) as set forth above.

b.      The total amount to be paid by Setting Defendant pursuant to Subparagraph (a) shall be deposited in the Ogden Rail Yard Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

43

57.     Settling Defendant may contest payment of any Future Response Costs under

Paragraph 56 if it determines that the United States has made an accounting error or if it alleges

that a cost item that is included represents costs that are inconsistent with the NCP.  Such

objection shall be made in writing within thirty (30) days of receipt of the bill and must be sent

to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection

shall specifically identify the contested Future Response Costs and the basis for objection.  In the

event of an objection, the Settling Defendant shall within the thirty (30) day period pay all

uncontested Future Response Costs to the United States in the manner described in Paragraph 56.

Simultaneously, the Settling Defendant shall establish an interest-bearing escrow account in a

federally-insured bank duly chartered in the State of Nebraska and remit to that escrow account

funds equivalent to the amount of the contested Future Response Costs.  The Settling Defendant

shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy

of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of

the correspondence that establishes and funds the escrow account, including, but not limited to,

information containing the identity of the bank and bank account under which the escrow

account is established as well as a bank statement showing the initial balance of the escrow

account.  Simultaneously with establishment of the escrow account, the Settling Defendant shall

initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United

States prevails in the dispute, within five (5) days of the resolution of the dispute, the Settling

Defendant shall pay the sums due (with accrued interest) to the United States in the manner

described in Paragraph 56.  If the Settling Defendant prevails concerning any aspect of the

contested costs, the Settling Defendant shall pay that portion of the costs (plus associated

accrued interest) for which it did not prevail to the United States in the manner described in

Paragraph 56; Settling Defendant shall be disbursed any balance of the escrow account.  The

dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States for its Future Response Costs.

58.     In the event that the payments required by Subparagraph 56 (a) are not made within thirty (30) days of the Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance. The Interest shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 72. The Settling Defendant shall make all payments required by this Paragraph in the manner described above.

XVII. I<span>NDEMNIFICATION AND</span> I<span>NSURANCE</span>

59.     Settling Defendant's Indemnification of the United States.

a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. §9604(e), Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to,

45

any claims arising from any designation of Settling Defendant as EPA's authorized

representatives under Section 104(e) of CERCLA, 42 U.S.C. §9604(e). Further, the Settling

Defendant agrees to pay the United States all costs it incurs including, but not limited to,

attorneys fees and other expenses of litigation and settlement arising from, or on account of,

claims made against the United States based on negligent or other wrongful acts or omissions of

Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and

any persons acting on its behalf or under its control, in carrying out activities pursuant to this

Consent Decree. The United States shall not be held out as a party to any contract entered into

by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.

Neither the Settling Defendant nor any such contractor shall be considered an agent of the United

States.

        b.      The United States shall give Settling Defendant notice of any claim for which the

United States plans to seek indemnification pursuant to this Paragraph, and shall consult with

Settling Defendant prior to settling such claim.

60.     Settling Defendant waives all claims against the United States for damages or

reimbursement or for set-off of any payments made or to be made to the United States, arising

from or on account of any contract, agreement, or arrangement between Settling Defendant and

any person for performance of Work on or relating to the Site, including, but not limited to,

claims on account of construction delays. In addition, Settling Defendant shall indemnify and

hold harmless the United States with respect to any and all claims for damages or reimbursement

arising from or on account of any contract, agreement, or arrangement between Settling

Defendant and any person for performance of Work on or relating to the Site, including, but not

limited to, claims on account of construction delays.

61.     No later than fifteen (15) days before commencing any on-site Work, Settling Defendant shall provide to EPA information that satisfies EPA as to Settling Defendant's financial resources and its ability to provide comprehensive general liability insurance with limits of one million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States as an additional insured. In addition, until Certification of Completion is issued by EPA pursuant to Section XIV above, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant needs to provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor. The United States shall be named as an additional insured on contractor and subcontractor insurance.

## XVIII. FORCE MAJEURE

62.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that the Settling Defendant exercises "best

47

efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

63.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, the Supervisor of Remedial Unit B, EPA Region 8, within twenty-four (24) hours of when Settling Defendant first knew that the event might cause a delay. Within seven (7) days thereafter, Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

64.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision.  If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

65.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than fifteen (15) days after receipt of EPA's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 62 and 63 above.  If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.   DISPUTE RESOLUTION

66.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

67.     Informal Dispute Resolution.   Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

68.     Statements of Position.

a.      In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within fifteen (15) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant. The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 69 or Paragraph 70.

b.      Within thirty (30) days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal

dispute resolution should proceed under Paragraph 69 or 70. Within twenty (20) days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

      c.     If there is disagreement between EPA and the Settling Defendant as to whether dispute resolution should proceed under Paragraph 69 or 70, the Parties shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

      69.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the RODs' provisions.

      a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the Parties.

      b.     The Assistant Regional Administrator for the Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final administrative decision resolving the dispute

based on the administrative record described in Paragraph 69 (a). This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 69 (c) and (d).

     c.     Any administrative decision made by EPA pursuant to Paragraph 69 (b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within twenty (20) days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

     d.     In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Assistant Regional Administrator for the Office of Ecosystems Protection and Remediation is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69 (a).

     70.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

     a.     Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 68, the Assistant Regional Administrator for the Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final decision resolving the dispute. The Assistant Regional Administrator's decision shall be binding on the Settling Defendant unless, within twenty (20) days of receipt of the decision, the Settling Defendant files with the Court and

serves upon the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

      b.     Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

      71.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 76. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

XX.    S<small>TIPULATED</small> P<small>ENALTIES</small>

      72.     Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree, the Work Plans or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the Work Plans and any

53

plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.    Stipulated Penalty Amounts – Tier 1

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 73. b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 5,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $20,000 | 31st day and beyond |

b.    Compliance Milestones.  Failure to comply with any of the requirements in Section VI (Performance of Work by Settling Defendant) Section VII (Remedy Review), Section VIII (Quality Assurance, Sampling, and Data Analysis), Section IX (Access), Section XII (Assurance of Ability to Complete Work), Section XV (Emergency Response), and Section XVI (Payment for Response Costs).

74.    Stipulated Penalty Amounts – Tier 2.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 74.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,500 | 1st through 14th day |
| $ 3,000 | 15th through 30th day |
| $5,000 | 31st day and beyond |

b.    Compliance Milestones. Failure to comply with any of the requirements in

Section X (Reporting Requirements), Section XI (EPA Approval of Plans and Other

Submissions), Section XII (Project Managers), Section XIV (Certification of Completion),

Section XVII (Indemnification and Insurance), Section XXIV (Access to Information), Section

XXVI (Notices of Submissions), and Section XXX (Community Relations).

75.    In the event that EPA assumes performance of a portion or all of the Work

pursuant to Paragraph 89 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendant

shall be liable for a stipulated penalty in the amount of $250,000.

76.    All penalties shall begin to accrue on the day after the complete performance is

due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity. However, stipulated penalties

shall not accrue: (1) with respect to a deficient submission under Section XI (EPA Approval of

Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's

receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency;

(2) with respect to a decision by the Assistant Regional Administrator for the Office of

Ecosystems Protection and Remediation, EPA Region 8, under Paragraph 69 or 70 of Section

XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that

Settling Defendant's reply to EPA's Statement of Position is received until the date that the

Director issues a final decision regarding such dispute; or (3) with respect to judicial review by

this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any,

beginning on the 31st day after the Court's receipt of the final submission regarding the dispute

until the date that the Court issues a final decision regarding such dispute. Nothing herein shall

prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

77.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance. EPA may send the Settling Defendant a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a violation.

78.     All penalties accruing under this Section shall be due and payable to the United States within thirty (30) days of the Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to:

Regular mail:                    Mellon Bank
                                 Attn: Superfund Accounting
                                 Lockbox 360859
                                 Pittsburgh, PA 15251-6859

Overnight Mail:                  U.S. EPA 360859
                                 Mellon Client Service Center Room 670
                                 500 Ross Street
                                 Pittsburgh, PA 15262-0001

Wire transfers should be sent directly to the Federal Reserve Bank in New York City with the following information:

ABA=021030004
TREAS NYC/CTR
BNF=/AC-68011008

The letter accompanying the payment or the check itself shall indicate that the payment is

for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #08-7E, the DOJ

Case Number 90-11-2-08568, and the name and address of the party making payment.  Copies of

check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent

to the United States as provided in Section XXVI (Notices and Submissions), and to Financial

Management Officer, U.S. EPA Region 8, 999 18th Street, Suite 300, Denver, CO 80202-2466.

79.     The payment of penalties shall not alter in any way Settling Defendant's

obligation to complete the performance of the Work required under this Consent Decree.

80.     Penalties shall continue to accrue as provided in Paragraph 76 during any dispute

resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not

appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within

fifteen (15) days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or

in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to

EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in

Subparagraph c below;

c.     If the District Court's decision is appealed by any Party, Settling Defendant shall

pay all accrued penalties determined by the District Court to be owing to the United States into

an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that it prevails.

81.     If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 76.

82.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

83.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.   COVENANTS NOT TO SUE BY PLAINTIFF

84.     United States' Covenant Not to Sue. In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of this

Consent Decree, and except as specifically provided in Paragraphs 85 and 86 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and 9613, and Section 7003 of RCRA, 42 U.S.C. §6973 relating to the Site. These covenants extend to Settling Defendant's officers, directors, and employees to the extent such officers', directors' or employees' liability arises solely from their status as officers, directors or employees. The foregoing covenants also extend to Settling Defendant's successors-in-interest to the extent that such successors-in-interests' liability arises solely from their status as successors-in-interest. These covenants not to sue shall take effect upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 51 of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendant, and its officers, directors and employees to the extent that the liability of those officers, directors and employees arises solely from their status as officers, directors and employees, and do not extend to any other person.

     85. <u>United States' Pre-certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant:

     a.    to perform further response actions relating to the Site, or

     b.    to reimburse the United States for additional costs of response if, prior to Certification of Completion of the Remedial Action:

    i. conditions at the Site, previously unknown to EPA, are discovered, or

    ii. information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

    86.    <u>United States' Post-certification Reservations</u>.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant

    a.    to perform further response actions relating to the Site, or

    b.    to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

    i conditions at the Site, previously unknown to EPA, are discovered, or

    ii information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

    87.    For purposes of Paragraph 85, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date the RODs were signed and set forth in the RODs and the administrative record supporting the RODs and the groundwater monitoring data included in the reports submitted to EPA entitled "South Plume Monitored Natural Attenuation Baseline Groundwater Monitoring Report, Operable Unit OU-4,

Ogden Railyard, Ogden, Utah", dated October 6, 2005, and "North Plume Monitored Natural Attenuation Baseline Groundwater Monitoring Report, Operable Unit OU-4, Ogden Railyard, Ogden, Utah, also dated October 6, 2005. For purposes of Paragraph 86, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the RODs, the administrative record supporting the RODs, the post-RODs administrative records, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

88.     General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a       claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based upon the Settling Defendant's ownership or operation of the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the RODs, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

     d.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

     e.      criminal liability;

     f.      liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

     g.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the Work Plans).

     89.   <u>Work Takeover</u>.

     a.      In the event EPA determines that Settling Defendant has (i) ceased implementation of any portion of the Work, or (ii) is seriously or repeatedly deficient or late in its performance of the Work, or (iii) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of twenty (20) days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

     b.      If, after the expiration of the 20-day notice period specified in the preceding Paragraph, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA determines necessary ("Work

Takeover"). EPA shall notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph

      c.      Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 69, to dispute EPA's determination of a Work Takeover under Paragraph 89 (b). However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 89(b) until the earlier of (i) the date that Settling Defendant remedies to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XIX (Dispute Resolution), Paragraph 75, requiring EPA to terminate such Work Takeover. In the event that Settling Defendant invokes dispute resolution procedures and it is determined that the Work Takeover was not warranted, EPA shall return any unexpended funds in accordance with the final administrative or judicial decision resolving such dispute.

      d.      After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any Performance Guarantee provided pursuant to Section XIII of this Consent Decree in accordance with the provisions of Paragraph 49 of that Section. If and to the extent that EPA is unable to secure the resources guaranteed under any such Performance Guarantee and the Settling Defendant fails to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed under the Work Takevoer, all in accordance with the provisions of Paragraph 49, any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payment for Response Costs).

90.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII.  COVENANTS BY SETTLING DEFENDANT

91.     Covenant Not to Sue. Subject to the reservations in Paragraph 92, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Site and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.      any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113, 42 U.S.C. §9607 or 9613, related to the Site; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Utah Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

These covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 85 - 89, but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

92.     The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

93.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

### XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

94.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and

causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

95.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for Matters Addressed in this Consent Decree. The "Matters Addressed in this Consent Decree" are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or any other person with respect to the Site. The Matters Addressed in this Consent Decree do not include those response costs or response actions for which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

96.     The Settling Defendant agrees that with respect to any suit or claim for contribution brought by Settling Defendant for matters related to this Consent Decree it will notify the United States in writing no later than sixty (60) days prior to the initiation of such suit or claim.

97.     The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree Settling Defendant will notify in writing the United States within ten (10) days of service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify the United States within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

98.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiffs).

## XXIV. ACCESS TO INFORMATION

99.     Subject to the assertion of privilege claims in accordance with Paragraphs 100 and 101 below, Settling Defendant shall provide to EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Remedial Action Area or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work subject to their right to counsel or any other right under State or federal law and any privilege recognized by federal or, if applicable, State law.

100.    Business Confidential and Privileged Documents.

a.      Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent

67

permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and

40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be

afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality

accompanies documents or information when they are submitted to EPA, or if EPA has notified

Settling Defendant that the documents or information are not confidential under the standards of

Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to

such documents or information without further notice to Settling Defendant.

       b.      The Settling Defendant may assert that certain documents, records and other

information are privileged under the attorney-client privilege, attorney work product privilege, or

any other privilege recognized by federal law, or if applicable, State law. If the Settling

Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiff

with the following:  (1) the title of the document, record, or information; (2) the date of the

document, record, or information; (3) the name and title of the author of the document, record, or

information; (4) the name and title of each addressee and recipient; (5) a description of the

contents of the document, record, or information: and (6) the privilege asserted by Settling

Defendant. However, no documents, reports or other information created or generated pursuant

to the requirements of the Consent Decree shall be withheld on the grounds that they are

privileged.

       101.     No claim of confidentiality shall be made with respect to any data, including, but

not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other documents or information evidencing conditions at or around the

Remedial Action Area.

## XXV. RETENTION OF RECORDS

102.    Until 10 years after the Settling Defendant's receipt of EPA's notification pursuant to Paragraph 51 of Section XIV (Certification of Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Remedial Action Area.  In addition, Settling Defendant must retain all documents and records that relate to the liability of any other person under CERCLA with respect to the Site.  Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

103.    At the conclusion of this document retention period, Settling Defendant shall notify the United States at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendant shall deliver any such records or documents which are not privileged to EPA.  The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege, attorney work product privilege, or any other privilege recognized by federal law, or if

applicable, State law.  If the Settling Defendant asserts such a privilege, it shall provide the

Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of

the document, record, or information; (3) the name and title of the author of the document,

record, or information; (4) the name and title of each addressee and recipient; (5) a description of

the subject of the document, record, or information; and (6) the privilege asserted by Settling

Defendant.  However, no documents, reports or other information created or generated pursuant

to the requirements of the Consent Decree shall be withheld on the grounds that they are

privileged.

104.    Settling Defendant hereby certifies that, to the best of its knowledge and belief,

after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed

of any records, documents or other information (other than identical copies) relating to its

potential liability regarding the Site since notification of potential liability by the United States or

the State or the filing of suit against it regarding the Site and that it has fully complied with any

and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42

U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. Notices and Submissions

105.    Whenever, under the terms of this Consent Decree, written notice is required to be

given or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their

successors give notice of a change to the other Party in writing.  All notices and submissions

shall be considered effective upon receipt, unless otherwise provided.  Written notice as

specified herein shall constitute complete satisfaction of any written notice requirement of the

Consent Decree with respect to the United States, EPA, and the Settling Defendant, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-2-08568

As to EPA:

Erna Waterman
Remedial Project Manager
U. S. EPA Region 8
Mail Code 8EPR-SA
999 18th Street, Suite 300
Denver, CO 80202

Andrea Madigan
Enforcement Attorney
U. S. EPA Region 8
Mail Code 8ENF-L
999 18th Street, Suite 300
Denver, CO 80202

As to the EPA Regional
Financial Mgmt Officer:

Martha Walker
EPA Financial Mgmt Officer
U. S. EPA Region 8
Mail Code 8TMS-F
999 18th Street, Suite 300
Denver, CO 80202

As to the State:

Executive Director
Utah Department of Environmental Quality
168 North 1950 West
P.O. Box 144840
Salt Lake City, Utah  84114

With a copy to:

Ogden Rail Yard Superfund Site Project
Manager, Utah Department of Environmental
Quality
Division of Environmental Response and
Remediation
168 North 1950 West
P.O. Box 144840
Salt Lake City, Utah  84114

As to the Settling Defendant:                    Gary L. Honeyman
                                                 Manager, Environmental Site Remediation
                                                 Union Pacific Railroad Company
                                                 221 Hodgeman
                                                 Laramie, Wyoming  82072

With a copy to:                                  Robert C. Bylmsa
                                                 Union Pacific Railroad Company
                                                 10031 Foothills Blvd.
                                                 Suite 200
                                                 Roseville, CA  95747

## XXVII. Effective Date

106.    The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. Retention of Jurisdiction

107.    This Court retains jurisdiction over both the subject matter of this Consent Decree

and the Settling Defendant for the duration of the performance of the terms and provisions of this

Consent Decree for the purpose of enabling the Parties to apply to the Court at any time for such

further order, direction, and relief as may be necessary or appropriate for the construction or

modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to

resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. Appendices

108.    The following appendices are attached to and incorporated into this Consent

Decree:

"Appendix A" is the ROD for OU#1

"Appendix B" is the ROD for OU#4

"Appendix C" is the Recorded Notice

"Appendix D" is the Remedial Action Area map.

"Appendix E" is the Site map.

### XXX. COMMUNITY RELATIONS

109.    Settling Defendant shall propose to EPA its participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendant under the Plan.  Settling Defendant shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Remedial Action Area.

### XXXI. MODIFICATION

110.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant.  All such modifications shall be made in writing.

111.    Except as provided in Paragraph 13 (Modification of Work Plans), no material modifications shall be made to the Work Plans without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the Work Plans that do not materially alter those documents, or material modifications to the Work Plans that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(ii), may be made by written

73

agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendant.

112.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

113.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

114.    If for any reason the Court should decline to approve this Consent Decree, this agreement is voidable at the sole discretion of either Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII. SIGNATORIES/SERVICE

115.    Each undersigned representative of the Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

116.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

117.    Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process of the

summons and complaint by mail on behalf of the Settling Defendant with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service of the summons and complaint in that manner and to waive the formal service requirements for service of the summons and complaint set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

### XXXIV.     FINAL JUDGMENT

118.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree

119.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States and the Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS _____ DAY OF _____, 2006.


_____
United States District Judge

FOR THE UNITED STATES OF AMERICA

_____

Date

W. Benjamin Fisherow, Deputy Chief
U.S. Department of Justice
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C.  20530


9-22-06
Date

Heidi Kukis Hoffman, Trial Attorney
U.S. Department of Justice
Environmental Enforcement Section
1961 Stout Street, 8th Floor
Denver, Colorado 80202
(303) 8441392

76

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

7/12/2006
Date

Carol Rushin
Assistant Regional Administrator, Region 8
U.S. EPA Region 8
999-18th Street, Suite 300
Denver, Colorado  80202

5/4/06
Date

Andrea Madigan
Enforcement Attorney
U.S. EPA Region 8
999-18th Street, Suite 300
Denver, Colorado  80202
(303) 312-6904

77

**FOR SETTLING DEFENDANT**
**UNION PACIFIC RAILROAD COMPANY**

6-15-06
Date

J. Michael Hemmer
Senior Vice President–Law and General
Counsel
Union Pacific Railroad Company
1400 Douglas Street, Mail Stop 1580
Omaha, Nebraska  68179

Agent Authorized to Accept Service of the Summons and Complaint on Behalf of the Above-
signed Party:

Lawrence E. Wzorek
Assistant Vice-President –Law
Union Pacific Railroad Company
1400 Douglas Street, Mail Stop 1580
Omaha, Nebraska  68179

6-21-06
Date

Dennis C. Farley
Lear and Lear, LLP
Attorneys for UPRR
299 S. Main Street, Suite 2200
Salt Lake City, Utah  84111
(801) 538-5000

78